# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

# Supreme Court of Kentucky

2021-SC-0492-MR

JAMES ANTHONY GRAY          APPELLANT

V.          ON APPEAL FROM SCOTT CIRCUIT COURT
HONORABLE THOMAS CLARK, SPECIAL JUDGE
NO. 07-CR-00211

COMMONWEALTH OF KENTUCKY          APPELLEE

## OPINION AND ORDER

James Anthony Gray was convicted by the Scott Circuit Court after a jury trial of two counts of murder for intentionally killing his parents, James Gray and Vivian Gray (collectively Gray's parents), and one count of tampering with physical evidence. This Court reversed and remanded, and on retrial the jury again found Gray guilty of the same crimes.[1] Gray received consecutive sentences for a total of fifty-five years' as follows: Count 1, Murder: twenty years'; Count 2, Murder: thirty-years'; and Count 3, Tampering: five years'. Gray again appeals as a matter of right, alleging multiple trial errors. Gray's

---

[1] The final judgment before us is the result of Gray's third trial. The first trial ended in a hung jury. Our Court reversed the result of Gray's second trial on the basis that Gray's confession, procured after a lengthy police interrogation which included the use of a fabricated DNA report tying him to the murders should have been suppressed and constituted a reversible error. *Gray v. Commonwealth*, 480 S.W.3d 253, 259-65 (Ky. 2016). Our Court also ruled that Gray's alternative perpetrator evidence regarding Peter Hafer should have been admitted. *Id.* at 266-68.

murder convictions are affirmed because the Court was equally split in its voting and the tampering conviction is reversed by a majority of the Court.

## I. THE MURDER CONVICTIONS

As to the two murder convictions, the vote of the six members of this Court participating in the determination of this appeal is equally divided. Therefore, pursuant to Supreme Court Rule (SCR) 1.020(1)(a), the judgment of the Scott Circuit Court on these convictions stands affirmed.

Bisig, Keller, and Lambert, JJ., would affirm the judgment of the Scott Circuit Court; Conley, Nickell, and Thompson, JJ., would reverse the judgment of the Scott Circuit Court. VanMeter, C.J., not sitting.

## II. THE TAMPERING CONVICTION

As to the tampering conviction, the vote of the six members of this Court participating, Bisig, Conley, Keller, Lambert, Nickell, and Thompson, JJ., is to reverse and remand for the trial court to vacate that conviction.

Gray argues that the mere fact that the gun used to commit the murders was never recovered was insufficient to allow the jury to infer that Gray intended to impair the availability of the evidence while believing an official proceeding may be instituted. Relying on *Mullins v. Commonwealth*, 350 S.W.3d 434, 443-44 (Ky. 2011), Gray argues that the fact that the perpetrator leaves the scene with evidence is not enough to establish a tampering charge when insufficient steps were taken to locate that evidence and no proof is provided that the defendant acted to prevent the evidence from being available at trial.

Gray argues that no evidence was presented at trial regarding what steps the police took to recover the gun.

The Commonwealth argues that in construing the evidence in the light most favorable to the Commonwealth, it was not clearly unreasonable for the jury to find Gray guilty of tampering after the jury found beyond a reasonable doubt that Gray had murdered his parents. There was evidence Gray had a .45 caliber pistol, and the jury heard evidence that the police engaged in an extensive search for the murder weapon. The Commonwealth cites various portions of testimony from Detective Rodger Persley and states that the search for the murder weapon included Gray's parents' home and surrounding areas, Gray's home, cars, and work van. Having reviewed such testimony, Detective Persley did not testify that Gray's home was searched for the murder weapon. Instead, he testified that police sought a search warrant to seize Gray's work clothes to test them for gunshot residue, but this warrant was denied.

KRS 524.100(1) states in relevant part:

A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:

(a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding[.]

In *Mullins*, 350 S.W.3d at 442, our Court established that evidence that the defendant must have left the scene with the firearm "is not enough to support a tampering charge without evidence of some additional act demonstrating an intent to conceal." The Court explained:

3

> When a crime takes place, it will almost always be the case that the perpetrator leaves the scene with evidence. If this amounted to a charge of tampering, the result would be an impermissible "piling on."

> Instead, intent to impair availability of evidence, believing that an official proceeding may be instituted, is the standard required under KRS 524.100. . . . [W]here the person charged is the defendant, it is reasonable to infer that the primary intent when a defendant leaves the scene of a crime is to get *himself* away from the scene and that carrying away evidence that is on his person is not necessarily an additional step, or an active attempt to impair the availability of evidence.

*Id.* at 443. When there are "conventional" locations where a firearm could have been found after being carried away, but there is no evidence that the police searched those places, rather than just searching the murder scene, this is insufficient to establish a tampering charge. *Id.* at 444.

> The Commonwealth cannot bootstrap a tampering charge onto another charge simply because a woefully inadequate effort to locate the evidence was made by the police. It is often the case that evidence will not be found. However, it is insufficient to bring a charge of tampering based solely on the fact evidence was not found when there were insufficient steps to locate that evidence, and there is no proof that the defendant acted with the intent to prevent evidence from being available at trial.

*Id.*

This same reasoning was applied in *McAtee v. Commonwealth*, 413 S.W.3d 608, 616-17 (Ky. 2013), to require a directed verdict on the tampering charge where the firearm was never located and a search was never made of the defendant's residence or that of his girlfriend's where he may have gone after committing the crime.

4

Our Court went even further in *Kingdon v. Commonwealth*, 2014-SC-000406-MR, 2016 WL 3387066, at *4 (Ky. June 16, 2016) (unpublished),[2] where the police did look in the defendant's apartment and automobile but failed to locate the firearm. The Court explained the Commonwealth's inference that because the firearm was not located the defendant must have destroyed, concealed, or disposed of it so it could not be used as evidence, was insufficient to establish the crime of tampering, explaining:

> The Commonwealth's theory leads to the paradoxical situation in which the complete lack of evidence concerning the gun becomes sufficient "evidence" to prove that Kingdon destroyed it, concealed it, or otherwise disposed of it. The theory is fundamentally flawed because it unconstitutionally shifts the burden to the defendant to prove his innocence.
>
> "The Commonwealth has the burden of proving every element of the case beyond a reasonable doubt[.]" KRS 500.070. "Due process commands that no man shall lose his liberty unless the Government has borne the burden of producing the evidence and convincing the factfinder of his guilt." *Speiser v. Randall*, 357 U.S. 513, 526 (1958) (citation omitted). If the Commonwealth's inability to explain what happened to the weapon sufficiently established a *prima facie* case of tampering with physical evidence, then the defendant could be found guilty unless he provided evidence to prove he had *not* "destroyed, concealed, or disposed of" it. Our system works on the opposite premise: the state must present evidence of guilt; the defendant is not required to produce evidence of his innocence.

---

[2] Pursuant to the Kentucky Rules of Appellate Procedure (RAP) 41(A), which replaces Kentucky Rules of Civil Procedure (CR) 76.28(4)(c), it is appropriate to consider this unpublished opinion and it satisfies the needed standards for consideration. Although *Mullins* and *McAtee* are certainly authoritative "there is no published opinion of the Supreme Court or the Court of Appeals that would adequately address the point of law" as to why tampering cannot be established in such a situation. RAP 41(A)(3).

*Id.* at *5. We agree with the cogent reasoning expressed in *Kingdon*, which is particularly applicable here.

Based on this precedent, there was insufficient evidence produced at trial to establish that Gray committed the crime of tampering with physical evidence. Accordingly, the Scott Circuit Court erred as a matter of law in failing to grant Gray a directed verdict on the tampering with physical evidence charge. We affirm the judgment and sentence of the trial court as to Gray's murder convictions, vacate the judgment and sentence of the trial court as to Gray's tampering conviction, and remand to the trial court for entry of a new judgment consistent with this Opinion.

ENTERED: June 13, 2024

_____
DEPUTY CHIEF JUSTICE